EUGENE T. FRITH, Appellee, v. ROSE FRITH, Appellant.

DIVORCE: Dissipated Habits Contributed to by Plaintiff. Dissipated habits of a wife, with consequent demoralization of the domestic relation, will not be denominated cruel and inhuman treatment, when it appears that the husband's conduct and method of living have distinctly contributed thereto.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

JANUARY 20, 1920.

REHEARING DENIED JULY 6, 1920.

ACTION in equity for divorce. Decree for plaintiff, and defendant appeals.—*Reversed.*

*Lyon & Willging*, for appellant.

*M. H. Czizek*, for appellee.

WEAVER, C. J.—The parties were married June 22, 1909, and lived together until a short time before this action was begun. One child, a daughter, has been born of the marriage, and, at the time of the trial below, was about 7 years old.

This action was begun by the husband on April 25, 1918. The original petition is stated in two counts. In the first count, plaintiff charges defendant with cruel and inhuman treatment, endangering his life, and with neglect of her husband and family, and other misconduct causing him much mental distress and impairment of health. In the second count of the petition, defendant is further charged with "adultery" on various occasions, but naming no co-respondents. The prayer of the petition is for an absolute divorce, and the custody of the child.

By an amendment, later filed, plaintiff alleges somewhat more specifically defendant's neglect of her household and family duties, and with being intoxicated on three or four specifically named dates. He also alleges that defendant "associated with and sought the company of one Scherrer, one Goetz, and one Zatin," and finally makes the specific charges of adultery with the men above named and names the places where such adulterous acts are said to have occurred.

To this action, defendant appeared, and by answer denied the allegations of the petition. She also, by cross-petition, asked a divorce from the plaintiff, on the ground of cruel and inhuman treatment.

On trial of these issues, the court held that plaintiff's charges of adultery had not been proven, but did find him entitled to a divorce on the ground of cruel and inhuman treatment, and decree was entered accordingly.

We shall not extend this opinion for a statement of the evidence, except in mere outline. The parties had been

married and maintained family relations nearly nine years, and plaintiff's chief complaint of misconduct relates almost entirely to alleged conditions developed in the last two or three months of that period. He concedes that, up to this period, defendant had charge of their home, performed the duties of housewife acceptably, without aid of a servant, and was a good housekeeper and mother. He claims, however, and as a witness testifies, that she developed a habit or practice of using intoxicants to excess, and on frequent occasions failed to give proper attention to her duties, and to her husband and child, and frequently came home more or less intoxicated, much to his distress. He further swears and offers evidence to the effect that his wife sought the society of one or more of the men named by him in his petition, and associated with them or some of them in various places and under circumstances of a compromising character. Some of this testimony, if credible, would justly expose the defendant to severe criticism, but we agree with the trial court in the conclusion that it does not justify a finding that she was guilty of adultery.

So far as actual unchastity is concerned, no witness testifies to it as a fact, or gives evidence which is necessarily inconsistent with the woman's innocence. It should be said, also, that, as witness on the trial, the defendant and each of the men named as co-respondents deny the charge unequivocally. Having disposed of this issue, the facts explanatory of the disruption of this family are not far to seek. The parties were married when still quite young. The husband was then and continued to be addicted to the habitual use of intoxicants, though, in the usual sense of the word, he was probably not a habitual drunkard. He kept liquors in his home, and liquors were served at his table. He was one of a set of young men and women frequently meeting in parties or social gatherings where drink was a common feature of the entertainment. It was not an unusual thing for these men and women to drive out at night, and make the rounds of drinking places in Dubuque, and to extend such rambles across the river into

East Dubuque, visiting the roadhouses and drinking resorts along the way. Up to the time of her marriage to the plaintiff, the defendant says she had never indulged in liquor drinking; and in this her story is not denied. Into the sort of life above mentioned, plaintiff introduced his young wife; and it is fairly evident that, in time, she learned to adapt herself to her environments, and became one of the gay world in which her husband found his chief pleasure. On his cross-examination as a witness, he says:

"Always kept liquor in the house. Always had a case of beer or so. Drank it at home. * * * We went around with different people, going to dances and little social sessions around at different houses. On practically all these occasions when they were at my house or I was at their houses, the men and women all had something to drink. Nothing was ever thought about that. On one of these occasions, my wife drank to excess. It was at Schmid's hall in 1917. I was there. I drank with her. We used to make automobile trips, too, and go around the loop, as they call it. We used to stop at the various drinking emporiums along the road. Men and women also would drink. I never found fault when my wife used to stop at any saloon. Used to stop at East Dubuque; at the two-mile house and at the three-mile house, Sandy Hook. Twice came over by way of Eagle Point, and stopped at O'Meara's place. Stopped at O'Hearn's place."

It is unnecessary to pursue this sorry revelation further. The evidence all tends to show 'that life for these people and those in whose society they found chief pleasure was a continuing round of dissipation. That this should have resulted in some material degree of demoralization in both of them was inevitable, and the only wonder is that they succeeded in maintaining so long a considerable degree of harmony. With reference to the time and circumstances of their final break and separation, each charges the other with being intoxicated, and with unprovoked physical violence; and it would be no great strain upon the probabilities to assume that both tell the truth. That defendant

had been, to say the least, imprudent in her association
with men other than her husband, and given him apparent
grounds for his jealousy, and did neglect her family and
household duties to some extent, may be conceded; but, the
court having found the charge of adultery not sufficiently
proven,—a finding with which we agree,—we are wholly
unable to frame any plausible theory of the facts on which
to grant plaintiff a divorce on the ground of cruel and in-
human treatment endangering his life. By recitations em-
bodied in the decree, the trial court bridges over the diffi-
culty with the finding that, although the charge of adultery
was not proven, yet defendant's conduct was of such char-
acter as to justly arouse her husband's suspicion of her
infidelity, and cause him great mental anxiety and suffer-
ing, and that "a continuance of such conduct by her could
not help but destroy the mental poise of the plaintiff to
such degree as to endanger his life." We are not at all
convinced of the soundness of this conclusion. It is true,
plaintiff swears his wife's conduct "has almost made a
nervous wreck" of him, and caused him worry and sleep-
lessness and loss of memory and flesh; but we are persuaded
that a man whose theory and philosophy of life find illus-
tration in the record he makes for himself in this case, is
hardly possessed of such delicate sensibilities that an ex-
perience of this sort is likely to prove fatal. That his wife
is not faultless may be admitted; but, in so far as her
faults are shown in the testimony, she is the work of his
hand, and his marital unhappiness is the harvest of his
own sowing.

In this connection, it should be said that, while a con-
siderable portion of the record is given to the alleged drink-
ing habits of the defendant, the prayer for divorce is not
based upon any allegation of habitual drunkenness on her
part; and the trial court avoids any reference to that sub-
ject in its decree. That she did use liquor is conceded,
and that whatever of demoralization appears in her habits
and conduct has its spring and origin in that fact is hardly
questionable; but, for reasons already suggested, it affords

plaintiff no grounds for relief in this action.

The decree appealed from is reversed, and cause remanded, with directions to the trial court to dismiss the petition and cross-petition, and make such order as the court shall find just and equitable for the taxation of costs and attorney's fees.—*Reversed.*

LADD, GAYNOR, and STEVENS, JJ., concur.